STATE of Missouri, Respondent,

v.

Bradley D. BRADSHAW, Appellant.

No. KCD 30261.

Missouri Court of Appeals,
Western District.

Dec. 31, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 4, 1980.

Application to Transfer Denied
March 11, 1980.

5. See Kansas City, Missouri Rev. Ordinances, Chapter 65, § 65.230(7)[a], [b], and [c].

Ward B. Stuckey, Kansas City, for appellant.

Atty. Gen., John Ashcroft, Asst. Atty. Gen., Paul R. Otto, Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SHANGLER, Presiding Judge.

The defendant Bradshaw was charged by information under § 559.007, RSMo Supp. 1975, with [felony] murder in the first degree as an aider and abettor in the homicide of one Strickland in the perpetration of a robbery. The cause was submitted to the jury under three instructions: first degree [felony] murder; conventional second degree murder, and manslaughter. The jury found the defendant guilty of second degree murder.

Three points are assigned on appeal, among them, that conventional second degree murder is not an included offense within first degree [felony] murder, so that the defendant stands convicted of a crime not charged. That same issue confronted this court in *State v. Handley*, KCD, 29, 291, was dealt with, and then was referred to the Missouri Supreme Court under our constitutional power of transfer [Mo.Const. Art. V, § 10] because of the general importance of the question presented.

Our opinion concluded that the recently enacted § 559.007 which redefines first degree [felony] murder as

> "[t]he unlawful killing of a human being when committed *without a premeditated intent* to cause the death of a particular individual but when committed in the perpetration of or in the attempt to perpetrate . . . robbery . . ." [Emphasis added.]

shares no related element with murder second degree and so a formal accusation for first degree [felony] murder does not sanction submission of murder second degree as an included offense.

On transfer, the principal opinion [Part II] of the Supreme Court en banc in *State v. Handley*, 585 S.W.2d 458 [1979] accepted our conclusion that the elements of conventional second degree murder under § 559.020—the willful, *premeditated* killing of a human being with malice—are not encompassed within the redefinition of first degree [felony] murder under § 559.007 as an unlawful *unpremeditated* homicide in the perpetration of an enumerated felony. The Supreme Court en banc opinion [Part II] held, moreover, that the direction of § 559.009.2 RSMo Supp.1975 that

> "[u]pon the trial of an indictment or information for murder in the first degree, the jury must inquire under such instructions as the court finds are justified by

the evidence, and by their verdict ascertain, whether the defendant is guilty of murder in the second degree . ."

could not be imposed constitutionally to submit a crime not charged—in terms or as a necessarily included offense—by formal accusation. The rationale of Part II of the principal opinion of the Supreme Court en banc [by Seiler, J.] concurs with the opinion of this court [by Somerville, J.] received on transfer: that as a matter of law a charge of first degree [felony] murder under § 559.007 does not encompass conventional second degree murder so that the latter may not be submitted under an accusation for the former unless separately charged and separately proved.

█ In the normal course of adjudication, an opinion of the Supreme Court en banc on a proposition of law controls all subordinate tribunals. Mo.Const. Art. V, § 2, 1945. An opinion of the Supreme Court en banc which lacks concurrence of a majority of the judges except as to result, however, does not decide the issue but has value only as instruction. *Viquesney v. Kansas City*, 305 Mo. 488, 266 S.W. 700, 702[6] (banc 1924). On transfer, *Handley* was submitted to six judges of the Supreme Court en banc. The principal opinion was written by Seiler, J., concurred in by Bardgett, C. J., by separate opinion, and concurred in result by Donnelly, J., and Finch, Sr., J. There were two separate dissents, Rendlen and Morgan, JJ. Part II of the en banc *Handley*—which concludes that conventional second degree murder is not a lesser included offense of first degree [felony] murder under § 559.-

007 has no concurrence.[1] Thus, the very issue before us was not decided with authority in *Handley* en banc but remains open for decision. *Heald v. Aetna Life Ins. Co. of Hartford, Conn.*, 340 Mo. 1143, 104 S.W.2d 379, 384 [10] (1937).

█ Nor does our prior opinion in *Handley* have efficacy on the issue. In the constitutional scheme of an ordered jurisdiction, transfer of a cause by an appellate court because of the general importance of a question vests jurisdiction in the Supreme Court for final determination as an original appeal. Mo.Const. Art. V, § 10, 1945 [as amended at special elections August 4, 1970, August 3, 1976].

█ We continue in the opinion that by the very terms of § 559.007, first degree [felony] murder—which requires proof of an unlawful killing of a human being done without a premeditated intent in the perpetration of an enumerated felony—does not encompass conventional second degree murder—which requires proof of a willful, premeditated homicide with malice aforethought. We adopt the rationale of Seiler, J., in the en banc *Handley* opinion [Part II] which is altogether congruent with our posture on the question per Somerville, J., in *Handley*.

█ We conclude that defendant Bradshaw was put to trial without formal accusation of second degree murder and therefore the conviction for that offense cannot stand. *Presnell v. Georgia*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). The question remains whether, nevertheless, the de-

1. The separate concurrence of Bardgett, C. J., expressly concurs in Parts I and III of the opinion of Seiler, J. "As to part II, I am not certain that murder in the second degree or manslaughter can never be submitted upon a trial for first-degree [felony] murder." The full text of concurrence does not disclose whether that opinion supports the proposition of Seiler, J., that as a matter of law conventional second degree murder is not an included offense of first degree [felony] murder or that merely a separate statement of the lesser offense in a formal accusation which includes the other charge—supported by evidence of the elements of second degree murder—must precede a valid

conviction for the lesser offense. We note anomalously, that the dissent of Rendlen, J., is the only other full agreement with the disposition of Part II by the Seiler, J., opinion—that, as a matter of law, the offense stated by § 559.007 does not encompass second degree murder.

The essential ground of the result to discharge the defendant in the en banc *Handley* [to the extent discernible] is that, since the sole issue for the jury was whether Handley was an aider and abettor in the felony, his acquittal of first degree murder—on principles of collateral estoppel—precluded prosecution of second degree murder and manslaughter once again.

fendant may be tried anew for that offense. The conviction for second degree murder was an implicit acquittal of first degree [felony] murder so that retrial for that offense would put the defendant twice in jeopardy. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). A retrial upon a new information for second degree murder would not infringe that principle [since that offense was not encompassed within the first degree murder charge] except, on principles of collateral estoppel, to the extent the acquittal of felony murder necessarily determined any of the elements that make up the new charge of second degree murder. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The doctrine of collateral estoppel, as embodied in the Fifth Amendment guarantee against double jeopardy, applies only when an issue has been previously adjudicated in favor of the defendant. The question becomes: whether a "rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, supra, l. c. 444, 90 S.Ct. l. c. 1194. That determination rests on the facts in evidence and the propositions submitted by instructions.

The proof of the substantive crime was made by one Vielbig, an accomplice with defendant Bradshaw in the commission of the offenses. Vielbig and Bradshaw concocted a scheme, during a round of alcohol and marihuana, to rob a taxicab. They had run out of money and decided to replenish themselves. They borrowed a shotgun and headed in the Vielbig car towards the airport where he dropped Bradshaw and then drove to a nearby dead end road to await the arrival of Bradshaw in a taxicab. Bradshaw was armed with a .45 caliber gun and Vielbig kept the shotgun. Within a half-hour, Vielbig saw a taxicab approach, slow, and then he heard the reports from the fire of two different guns. Vielbig then saw the taxicab leave the road and strike some trees. As he approached the vehicle, he heard the cab driver entreat, over and over: "Don't kill me." He heard the defendant say: "Let go of me, I won't

hurt you." Vielbig walked up to the taxicab, saw the driver prostrate, and as he began to sit up, Vielbig thought he had a gun in his hand, so Vielbig shot the driver in the head with the shotgun. Bradshaw told Vielbig he had been wounded, so he took him to an apartment where they were arrested later.

The police investigation recovered the .45 caliber weapon, the shotgun and other accoutrements of the criminal venture. There was evidence that the bullet removed from the neck of the victim matched the test bullets fired from the .45 caliber weapon found behind the apartment where the two were apprehended. The investigation also discovered the blood-stained bills of money taken by Bradshaw in the robbery and given to Vielbig and placed by him in the apartment chest of drawers.

On this evidence, Instruction Seven submitted first degree [felony] murder. The implicit acquittal for felony murder by the jury conviction for second degree murder necessarily determines that the jury did not believe one of the three propositions submitted by Instruction Seven: (1) that Bradshaw or Vielbig caused the death of the taxicab driver *or* (2) that either one did so in the perpetration of an armed robbery *or* (3) that Bradshaw acted alone or in concert with Vielbig in the conduct described in (1) and (2).

On this evidence Instruction Eight submitted conventional murder second degree. The verdict of guilty means the jury necessarily found (1) that Bradshaw or Vielbig caused the death of the taxicab driver *and* (2) that Bradshaw or Vielbig intended to cause the taxicab driver serious bodily harm *and* (3) that Bradshaw acted alone or in concert with Vielbig *and* (4) that Bradshaw did not act out of anger, fear, or sudden provocation.

■ The juxtaposition of the two verdicts and instruction forms discloses that the acquittal returned on Instruction Seven [felony-murder] exonerates Bradshaw only as a participant in the robbery. The evidence that a robbery was perpetrated by

Vielbig and Bradshaw in concert was substantial and without contradiction. The evidence that death was caused during the course of a concerted criminal enterprise was also substantial and without contradiction. There was evidence, however, that Vielbig administered a premeditated, willful shotgun blast upon the head of the victim with malice aforethought *after* the robbery was concluded, and that death was caused from that infliction and not from the wound administered by the .45 caliber pistol. The only "rationally conceivable issue in dispute before the jury" [*Ashe v. Swenson*, l. c. 445, 90 S.Ct. l. c. 1195] under Instruction Seven for felony-murder, therefore, was whether death was dealt within the res gestae of the robbery.[2] *State v. King*, 342 Mo. 1067, 119 S.W.2d 322, 326[4] (1938).

Accordingly, neither want of evidence nor the bar of collateral estoppel impedes a trial anew against Bradshaw for second degree murder formally charged which submits that death resulted during the criminal enterprise independent of the robbery.

The second point by the defendant relates to his substantive defense of lack of mental capacity for criminal responsibility and to his procedural contention that he lacked capacity to understand the proceedings against him and to assist in his own defense. In response to formal motion for mental examination under § 552.020, RSMo 1978, the defendant Bradshaw was examined by Dr. Snyder, staff physician at the Fulton State Hospital. The certificate of examination concluded that Bradshaw had a mental disease or defect within the definition of § 552.010 but had capacity to understand the proceedings against him and to assist in his own defense. The report certified also the likelihood that conduct alleged against him was the result of a mental disease so that he did not understand the

wrongness of his conduct. The report concluded that Bradshaw required continued hospitalization for psychiatric purposes. The deposition of Dr. Snyder was received at trial. It gave opinion that the unlawful conduct alleged against Bradshaw was the product of mental disease.

The defendant then gave the formal notice of purpose to rely on the defense of mental disease or defect excluding responsibility as required by § 552.030.2. The court ordered the defendant to submit to another examination for an additional opinion. The second examination and report were concluded by Dr. Parwatikar, a psychiatric consultant, also at the Fulton State Hospital. His certificate concluded that Bradshaw suffered from a paranoid psychosis which needed treatment, that he lacked capacity to assist his defense and that at the time of the conduct alleged against him, he did not understand the wrongness of his conduct and was unable to conform his conduct to the requirements of the law.

 The defendant contends that on this evidence the court was bound as a matter of law to dismiss the proceedings for want of capacity of the defendant to assist his defense and to take from the jury determination of the defense of mental disease or defect excluding responsibility. The question of competency to stand trial presents a preliminary issue for the court. § 552.020.7, RSMo Supp.1975. To defer criminal prosecution on that ground the court must find—without traditional adversarial concern for burden of proof—reasonable cause to believe the accused suffers from mental disease or defect which affect fitness to proceed. *State v. Clark*, 546 S.W.2d 455, 468[17, 18] (Mo.App.1977). The opinions of the two examiners on that issue were in contention. The order that Bradshaw was competent to proceed to trial rests on a proper exercise of discretion.

2. The general verdict employed by our system of criminal instructions simply does not allow a precise discernment of the grounds of verdict. An even more pragmatic explanation for the jury rejection of first degree [felony] murder in favor of the verdict of guilt for second degree murder rests in the evidence by Vielbig for the

State that he pleaded guilty to second degree murder and awaited sentence at the time of trial. The jury conviction of second degree murder against Bradshaw may be seen as the mete of an equal justice for the same criminal conduct.

The related point contends that the medical opinion established beyond reasonable doubt that Bradshaw suffered from mental disease at the time of the homicide alleged so the court was bound, as a matter of law, to take from the jury the issue of mental disease or defect excluding responsibility and direct a verdict of acquittal on that ground. That the experts may be of unanimous opinion that the accused suffered from a mental disease at the time of the offense alleged against him does not remove the issue of criminal responsibility from the jury. The prosecution has no burden to prove the sanity of the accused. The law presumes persons to be free from mental disease or defect and that presumption *alone* suffices to take the issue to the jury when controverted by substantial—and even uncontradicted—evidence to the contrary. § 552.030.7, RSMo 1978; *State v. West*, 575 S.W.2d 257 (Mo.App.1978).

The defendant contends also that the failure of the court to give MAI–CR 2.36, even in the absence of request, was prejudicial error. That instruction cautions the jury to consider statements made to the physicians by the defendant only as they may bear on the mental condition of the accused at the time of the offense alleged and not as evidence of guilt or innocence. We need not assess this complaint since the cause will be remanded for recharge and retrial. We note that the contention of error was not presented in the motion for new trial and so is not preserved. It may be, nevertheless, that a court of review owes a duty to respond under plain error Rule 27.20(c) since the Notes On Use direct that the instruction must be given, *whether requested or not*, where applicable. The medical testimony put into evidence such disclosures from the defendant under psychiatric examination that he would kill "if God ordered him to kill," that the defendant related he had told other inmates "it would be better for him to go to prison than to stay in the hospital because there was more work for God for him to do in prison," and other like statements. Upon eventual retrial, should the defense of mental responsibility be reasserted, statements of

that import would require MAI–CR 2.36 be submitted to limit the effect of the expert testimony to the legitimate purpose.

The judgment is reversed and the defendant is ordered discharged unless within ten days of our mandate the prosecution initiates criminal proceedings against the defendant for formal charge.

All concur.