**STATE of Missouri, Respondent,**

v.

**Gary AUBREY, Appellant.**

**No. 41210.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 18, 1980.

Karl F. Lang, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Charged with felony-murder under §§ 565.003 and 565.008, RSMo Supp. 1977, and two charges of assault with intent to kill with malice aforethought, defendant was convicted of second degree murder—§ 559.020, RSMo 1969—and the two assault charges. His appeal is based on the state's failure to charge him with second degree murder and the alleged failure of evidence to support the convictions for assault with intent to kill with malice aforethought. We affirm the convictions for assault with intent to kill with malice aforethought and reverse and remand as to the second degree murder. *State v. Handley*, 585 S.W.2d 458 (Mo. banc 1979).

During the night and early morning hours of July 2 and 3, 1977, Freddie Thomas won a substantial amount of money—$800–$900—in a north St. Louis crap game. Defendant, known as "Little Daddy", and Arbary Jackson, known as "Pops", were witnesses to the game but apparently were not participants. During the game, defendant and "Pops" were observed handling handguns of some kind but not in a threatening manner. About 5:00 a. m., Freddie Thomas and his brother, Harry Lee Williams, left the game to pick up Thomas' girlfriend, Joyce Ray. About 5:30 a. m. as Thomas, Williams and Ms. Ray were walking, an automobile pulled alongside of them and two men, identified by Williams as the defendant and "Pops", jumped out, displayed guns, and as Freddie Thomas ran away, both commenced firing at him. Thomas was shot twice in the leg and once in the head—a mortal wound. After Thomas had fallen from his wounds, both assailants went to him and "got into his pockets". They then turned and started shooting at Williams and Ms. Ray, who fled without injury.

Defendant was charged in one count with felony-murder by acting in concert with another (Arbary "Pops" Jackson) in the killing of Freddie Thomas, the information providing:

## COUNT I

SAM C. BERTOLET, Assistant Circuit Attorney further amends substitute information in lieu of indictment makes as follows:

That GARY AUBREY also known as GARY LOUIS AUBRY, also known as GARY AUBRY, ACTING WITH ANOTHER, in the City of St. Louis, State of Missouri, on the 3rd day of July, 1977, unlawfully, feloniously, willfully, deliberately, on purpose and of his malice aforethought did shoot FREDDIE THOMAS in the commission of the perpetration of a robbery, thereby inflicting a mortal wound upon the said FREDDIE THOMAS, from which said mortal wound FREDDIE THOMAS did die on July 9, 1977; contrary to Sections 565.003, 565.008, Missouri Revised Statutes in such case made and provided, and against the peace and dignity of the State.

He was also charged with two counts of assault with intent to kill with malice aforethought for shooting at Williams and Ms. Ray.

For the killing of Thomas, the jury was instructed on first degree (felony) murder, second degree murder and manslaughter. The jury found defendant guilty of second degree murder and two counts of assault with intent to kill with malice aforethought.

Defendant's appeal raises two points of alleged error: (1) that the trial court erred in instructing on second degree murder as there was no charge for the offense; (2) that the evidence was insufficient to support the conviction for assault with intent to kill with malice. We treat the latter contention first.

Defendant, alluding to certain contradictions in Williams' testimony and from the location of spent shell casings found in the street, contends that there was no substantial evidence from which the jury could find that defendant had shot at either Harry

Williams or Joyce Ray. The evidence to support the assault conviction came from Williams and Ray. After testifying that two men jumped from a car, shot Freddie Thomas and then went through his pockets as he lay stricken, Williams related the following:

Q. [Prosecutor] Then, what happened?
A. [Williams] When they got through shooting at him [Freddie Thomas], they turned around and started shooting at us.
Q. Were both of these people armed?
A. Both was armed.
Q. Were they handguns or what?
A. One was a handgun; one was an automatic.
Q. And they were both shooting?
A. Yes.
Q. And they shot in your direction as you were standing over here on Cass and Leffingwell?
A. Yes.
Q. After they started shooting at you, what did you do?
A. I ran.
Q. Where did you run?
A. I ran down Leffingwell.
Q. And on this map where did you run?
A. To Howard.
Q. Howard would be to the right; is that correct?
A. Yes.
Q. When you got to Howard, what did you do?
A. I ran through a gangway.
Q. These two shooters, do you know who they were?
A. I know them by their nicknames.
Q. What are their nicknames?
A. Little Daddy and Pops.
Q. The same two men who were in the crap game?
A. Yes.
Q. Is either of those men in the courtroom today?
A. Yes.

Q. Would you point them?
(Witness complies.)
Are you pointing to the man in the gray shirt?
A. Yes; Little Daddy. [Defendant]

Joyce Ray, after corroborating Williams' testimony about defendant and Arbary Jackson shooting Freddie Thomas and rifling through his pockets testified:

Q. [Prosecutor] You said they got into his pockets?
A. [Joyce Ray] Yes, sir.
Q. Was it both that got into his pockets, or do you remember?
A. Yes.
Q. What happened after that?
A. Then, they started back shooting at us and we just ran.

The familiar guidepost for determining whether a submissible case has been made is to view the evidence and all reasonable inferences therefrom in the light most favorable to the state. *State v. McCall*, 602 S.W.2d 702 (Mo.App.1980). In so doing, and allowing the jury to resolve contradictions and credibility of witnesses, *State v. Harris*, 602 S.W.2d 840 (Mo.App.1980), we find that the evidence is sufficient to establish that defendant shot at Harry Williams and Joyce Ray. The subjects of the shooting testified that they saw him do so, and the jury could believe that fact. *State v. Harty*, 569 S.W.2d 783 (Mo.App.1978); *State v. Webb*, 518 S.W.2d 317 (Mo.App.1975). The convictions for assault with intent to kill with malice aforethought are affirmed.

On the issue of the second degree murder instruction, defendant declares that *State v. Handley* is specific authority for defend-indestructible barrier to a second degree murder instruction. Judge Seiler's opinion in writing for a plurality of the Court in *Handley*, is specific authority for defendant's contention "that because the felony-murder indictment did not include the charge of second degree murder, he [the defendant] was impermissibly convicted of a crime of which he had not been accused." *Id.* at 461. That is the situation in this case,

and we are confronted with the issue of whether the *holding* of *Handley* is binding on this court or instructive only. *State v. Bradshaw*, 593 S.W.2d 562 (Mo.App.1979). *See State v. Martin*, 602 S.W.2d 772 (Mo.App.1980).

It appears, at least, that by reason of *Handley*, defendant cannot be convicted of second degree murder in this trial as he was not charged with that offense. But *Handley* also provides the concurring opinion by Chief Justice Bardgett, in which he comments that he is "not certain that murder in the second degree or manslaughter can never be submitted upon a trial for first degree (felony) murder." From that concurring opinion the way appears cleared to allow a prosecutor to specifically charge murder in the second degree or manslaughter in a separate charge where the highest charge is first degree (felony) murder. *State v. Bradshaw*, 593 S.W.2d at 566–67, so holds.

■ Certainly, the factual situation in this case differs mightily from *Handley*. Quite clearly, a jury could readily find that defendant "Little Daddy" Aubrey, acting in concert with Arbary "Pops" Jackson, was on the scene and actively participating in the killing of Freddie Thomas; that all the elements of second degree murder as recited in *Handley* were present.[1] Thus, the circumstances here are readily distinguishable from *Handley* where the defendant was not present or near the scene of the crime and apparently did not know what crime was going to be committed. Second degree murder was simply not a submissible charge in *Handley*. It is in this case. There is sufficient substantial evidence to charge and convict defendant of second degree murder.

Accordingly, the defendant's conviction for second degree murder should be reversed and the cause remanded to the trial court to permit the state—if it so elects—to charge the defendant with the crime of second degree murder. This comports with *State v. Bradshaw*, 593 S.W.2d at 566–67, in which application to transfer was denied by the Supreme Court.[2]

The judgment is affirmed as to the convictions for assault with intent to kill with malice aforethought. The judgment as to second degree murder is reversed and remanded in accordance with this opinion.

PUDLOWSKI, P. J., and WEIER, J., concur.

---

1. The elements of second degree murder: (1) willful, (2) premeditated, (3) killing (4) of a human being (5) with malice aforethought. *State v. Handley*, 585 S.W.2d at 462; *State v. McCall*, 602 S.W.2d at 707.

2. *State v. Wilkerson*, No. 40648 (Mo.App.E.D. July 1, 1980), in which the defendant was charged, *inter alia*, with felony-murder under § 565.003, RSMo Supp.1977, but convicted after instruction, but no charge, of second degree murder, appears to parallel this case. In *Wilkerson*, this court held, relying on *Handley* and *Bradshaw*, that the trial court was without jurisdiction to instruct on common form second degree murder as no charge had been made for that crime. Finding that there was sufficient substantial evidence to warrant a second degree murder charge, this court remanded the cause to allow the state to make that charge but later, on its own motion and after opinion, transferred the case to the Missouri Supreme Court. The facts of this case differ somewhat from those in *Wilkerson*; hence, there is no need to transfer.