**STATE of Missouri, Respondent,**

v.

**Joseph JACKSON, Jr., Appellant.**

**No. 55971.**

Supreme Court of Missouri,
En Banc.

March 8, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Robert C. Babione, St. Louis, for appellant Public Defender Bureau, City of St. Louis.

DONNELLY, Judge.

Appellant, Joseph Jackson, Jr., was convicted of murder in the first degree under V.A.M.S. § 559.010, by a jury in the Circuit Court of the City of St. Louis, Missouri, and his punishment was assessed at death. He appealed to this Court.

Section 559.010 RSMo 1969, V.A.M.S., reads as follows:

"Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree."

This case was tried and submitted against appellant on the basis that the homicide was committed in the perpetration of *arson*. This conclusion is inescapable in view of Instruction No. 3, given by the Court, and which reads as follows:

"The Court further instructs the jury that under the law of this State every homicide which shall be committed in the perpetration of arson is deemed murder in the first degree. And in this case, if the jury find and believe from the evidence, beyond a reasonable doubt, that a homicide occurred while the defendant, acting alone or jointly with another or others, was setting fire to and burning a dwelling house of William Reeder, then such perpetration stands in lieu of deliberation and premeditation as hereinbefore defined, and the jury will be warranted in finding the defendant guilty of Murder in the First Degree and should so say in their verdict.

"The word 'arson', as used in this instruction, means the willful and malicious setting fire to or burning of a dwelling house of another."

The indictment charged, in part: "That JOSEPH JACKSON, Jr. on the 10th day

of May, one thousand nine hundred and sixty-eight, at the City of St. Louis aforesaid, did unlawfully, wilfully, feloniously and maliciously set fire to and burn a certain dwelling house of WILLIAM REEDER then and there before, at and during said burning being in the said dwelling house, that he, the said JOSEPH JACKSON, Jr., in so wilfully, feloniously and maliciously setting fire to and burning the said dwelling house as aforesaid, then and there feloniously, wilfully, deliberately, premeditately and of his malice aforethought, did mortally burn the body of the said WILLIAM REEDER by means of which said mortal burning of the body of the said WILLIAM REEDER, the said WILLIAM REEDER on the 10th day of July, 1968, at the City of St. Louis did die; * * *."

On May 10, 1968, a fire occurred in a dwelling house in the City of St. Louis. A fireman found in the house one William Reeder, who was severely burned. It is uncontroverted that Reeder died as a result of burns.

The St. Louis Police Department's Bomb and Arson squad investigated, and at first concluded, on the basis of information that the deceased was a wino and a smoker, that no criminal agency was involved.

Thereafter, on or about August 17, 1968, appellant was arrested and interrogated by Detective James Watts.

The evidence introduced by the State in its attempt to convict appellant as charged is as follows:

"Q Detective Watts, I believe my last question was related to the statement made by Joseph Jackson. Could you tell the jury what Joseph Jackson told you about this fire?

"A Joseph Jackson stated that on the evening of the incident he and another friend of his by the name of Willie James Evans was walking east on Park Avenue and when in front of 2607 Park they observed a white man standing up in the yard, that he appeared to be a wino. At this time Willie Evans said, 'Let's see what he's got.' The two of them walked into the yard and while he, Jackson, held the victim, Evans went through his pockets, he found a key, at which time the three of them then unlocked the front door and entered the first floor. Jackson stated that Willie Evans looked the first floor over, however they found nothing, they were looking for money. At this time Willie Evans stated, 'Let's go upstairs.' Jackson stated, 'Let's get out of here.' However, they proceeded up the stairway to the top of the stairs, going into the front room, which would be the south room of the building, on the second floor, he was watching the victim while Willie Evans went over and forced open a bookcase. Willie Evans found two cans that contained change. At this time Jackson stated that the victim made some statements, some remark he didn't understand and he, Jackson, hit the victim and knocked him to the floor. He stated that at this time Willie Evans went back into the rear, what would be the north room where the bedroom was, and continued to look for money. However, finding none he set fire to the rear room. They both then started to leave the house, down the stairs, and started to leave the house by the side front door, the same being the one they had entered. However, the smoke at this time was drifting down and starting to go outside, so Willie Evans says, 'let's go out through the back; somebody might see us.' So Willie Evans broke out the rear window and they both left that way. Jackson stated that they had taken the money from the two cans and placed it in two socks, a pair which he had with him at the time they were in the house. They went to the home of Willie Evans' uncle in the 2200 block of Hickory where they placed the two socks on the dresser. They remained there for a time and shortly thereafter—"

On cross-examination, Detective Watts testified, in part, as follows:

"Q You indicated in your testifying about what Jackson told you that Evans went to the back room and set the fire, is that correct?

"A Yes, sir.

"Q Did Jackson say he actually saw Evans set the fire or how did he know Evans did set the fire?

"A He said Evans went back in the rear room and set a fire.

"Q And did Jackson tell you he did anything at that time?

"A I don't understand what you mean.

"Q What did Jackson say he did?

"A He stayed there. The victim was on the floor and he waited out in the hall.

"Q Did he do anything besides wait out in the hall?

"A He denied starting it, any fire.

"Q Did he say he did anything other than wait out in the hall?

"A No, sir.

"Q He didn't tell you that he tried to talk Willie Evans out of starting the fire?

"A Yes, he did. He stated that he tried to talk Evans out of starting the fire.

"Q And the incident about the fire occurred after they had been in the house some time?

"A Yes.

"Q And Evans set the fire?

"A Yes, sir.

"Q At that time Jackson tried to talk him out of it?

"A Yes.

"MR. DARST: I object to the form of the question. We are all saying what the defendant said. That isn't exactly what the question is. I have to object to the form of the question.

"THE COURT: Sustained as to the form of the question.

"Q He told you that he tried to persuade Evans from setting the fire, isn't that correct?

"A Yes.

"Q Did he say anything in particular as to whether or not he set the fire?

"A He denied setting it.

"Q Did he say he didn't set any fire at all?

"A That's right, sir.

"Q Did he say in any way he helped Evans set the fire?

"A No, sir.

"Q And he also denied helping Evans set the fire?

"A Denied it, sir?

"Q Yes.

"A Yes, he denied it."

This case involves an application of the felony-murder doctrine. The question presented is "whether the proof was sufficient to submit the element of deliberation, and hence the hypothesis of murder in the first degree." State v. Goodwin, Mo., 352 S.W.2d 614, 619[1].

The following law is well-settled:

(1) If A and B conspire to set fire to a dwelling house, and B sets the fire, and C is burned and dies as a result, A can be found guilty of murder in the first degree since the homicide was committed in the perpetration of the arson. State v. Meadows, 330 Mo. 1020, 51 S.W.2d 1033;

(2) If A and B conspire to set fire to a dwelling house, and B sets the fire, and C comes out of the house, and B shoots him with a pistol and kills him, A can be

found guilty of murder in the first degree since the homicide was committed in the perpetration of the arson. State v. Bobbitt, 215 Mo. 10, 114 S.W. 511;

(3) If A and B rob a bank, and B shoots and kills the cashier, A can be found guilty of murder in the first degree since the homicide was committed in the perpetration of the robbery. State v. Hart, 292 Mo. 74, 237 S.W. 473.

In the above cases, when proof was made that the homicide was committed in the perpetration of arson or robbery, then by force of § 559.010, supra, "it * * * [was] unnecessary to prove the premeditation, deliberation, etc., which otherwise would have to be proved in order to constitute first degree murder." State v. Meadows, supra, 330 Mo. 1020, 1027–1028, 51 S.W.2d 1033, 1037. In our opinion, these cases are of no assistance in resolving the issue presented under the evidence in this case.

In State v. Darling, 216 Mo. 450, 459, 115 S.W. 1002, 1004, this Court said: "If several persons conspire to do an unlawful act and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design is in the construction of law the act of all. And he who advises or encourages another to do an illegal act is responsible for all the natural and probable consequences that may arise from its perpetration."

It is possible that, had appellant been prosecuted for murder in the first degree on the basis that he conspired with Evans to commit *robbery,* it could be held, under the evidence, that Reeder's death was a natural and probable consequence of the perpetration of the *robbery,* and that "the proof * * * [would be] sufficient to submit the element of deliberation, and hence the hypothesis of murder in the first degree." State v. Goodwin, supra; State v. Darling, supra; and the leading case of State v. Glover, 330 Mo. 709, 50 S.W.2d 1049, 87 A.L.R. 400.

However, appellant was prosecuted, and the State's case was submitted to the jury, on the basis that appellant conspired with Evans to commit *arson.* In our opinion, the evidence is not sufficient to show that appellant conspired with Evans to commit *arson* or that he advised or encouraged Evans to commit *arson.* We cannot permit the judgment to stand.

As indicated, we are not prepared to say that the State cannot make a case of murder in the first degree against appellant on the basis that Reeder's death occurred as a natural and probable consequence of the *robbery* in which appellant participated. Accordingly, the cause should be remanded for a new trial. State v. Patton, Mo.Sup., 308 S.W.2d 641.

The judgment is reversed and the cause remanded.

FINCH, Acting C. J., and SEILER, MORGAN, HOLMAN and BARDGETT, JJ., concur.

WOLFE, Sp. J., dissents.

HENLEY, C. J., not sitting when cause was submitted.