**STATE of Missouri, Respondent,**

v.

**Lem HEMPHILL, Jr., Appellant.**

**No. 57825.**

Supreme Court of Missouri,
Division No. 2.

Jan. 14, 1974.

John C. Danforth, Atty. Gen., Vincent F. Igoe, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Leonard J. Frankel, Clayton, Newark & Baris, St. Louis, for appellant.

STOCKARD, Commissioner.

Appellant was found guilty of murder in the first degree and sentenced to life imprisonment. Notice of appeal was filed prior to April 9, 1973. We reverse and remand.

The witnesses for the State testified, in substance, that appellant's father took a butcher knife away from Callie Mae following an argument, and threw it on a table in the bedroom. Appellant then shot Callie Mae, and after she fell to the floor he stood directly over her and shot her twice in the head. They also testified that she did not have the butcher knife in her hand at the time she was shot, but one witness admitted on cross-examination that she had testified differently at the coroner's inquest.

Otis White, a witness for the defense, testified, among other things, that when appellant's father took the butcher knife

away from Callie Mae and threw it on the table, Callie Mae then picked up the knife and turned and said: "I am going to kill both of you son-of-a-bitches." Appellant then pulled out his pistol and shot three times in rapid succession. Appellant testified in his own behalf and his testimony was substantially the same as that of Otis White. He expressly testified to the threat of Callie Mae to kill both him and his father, and he further stated that he was scared that she was going to cut him with the knife and for that reason he started shooting.

Appellant requested and the court refused to give the following instruction:

If the jury finds and believes from the evidence that the deceased Callie Mae Ball communicated a threat of violence immediately prior to her death to the defendant Lem Hemphill, Jr., you may consider such threat as explaining the conduct and apprehensions, if any, of the defendant. You may also consider such threat, if any, communicated to the defendant for the purpose of determining who was the aggressor at the time and place of the shooting.

In State v. Finn, 243 S.W.2d 67 (Mo. 1951), a murder case in which the issue of self-defense was presented, an instruction, which for all practical purposes was the same as the above instruction, was requested and refused. This court held: "It is our view of the instant contention that inasmuch as the trial court was under the duty under this evidence to instruct on self-defense that [the requested] instruction G should have been given. It cannot be rationally contended that instruction 4 [submitting self-defense] was sufficient (and that it was not error to refuse instruction G) where, as here, the evidence presented an actual issue as to whether defendant had reasonable cause to apprehend injury to himself or had reasonable cause to honestly believe himself to be in danger, and also an actual issue under the testimony as to who, in fact, was the actual aggressor at the time of the shooting. The re-fusal to give instruction G left the jury without any light whatever upon very important features of the defense of self-defense. Those features of that defense are not to be thus minimized because defendant was entitled to have the jury specifically consider them. Those features are the very heart of self-defense. We think it is the sounder rule that where, as here, threats made by deceased were communicated to defendant and a threat instruction was requested, that a proper threat instruction should be given because such threats are entitled to be considered by the jury as bearing on conduct, apprehension and attitude and as shedding light upon who was in fact the aggressor. * * * The refusal to give requested instruction G was reversible error." See also State v. Bounds, 305 S.W.2d 487 (Mo.1957).

■ We note that MAI–CR 2.40, one of the group of instructions which must be given whether requested or not, contains in par. 4 thereof alternative provisions, one of which contains substantially the language of the requested instruction in this case. Although the State's witnesses did not testify that Callie Mae made threats to appellant immediately before the shooting, appellant and Otis White did so testify, and appellant may rely on that evidence to support his request for the instruction. The failure to give the requested instruction was prejudicial error.

■ In view of the disposition of this case only one other matter need now be considered. Appellant has asserted that by reason of the res gestae exception to the hearsay rule he was entitled to have two police officers testify as to statements made to them by him shortly after the shooting and when the officers first arrived on the scene. A person offering such statements has the burden to establish their admissibility. Wren v. St. Louis Public Service Company, 333 S.W.2d 92 (Mo. 1960). In the record before us there is no showing of the precise amount of time that elapsed between the shooting and the time

the statements were made, but the circumstances indicate that they were not contemporaneous with the event. After the shooting someone called the police at appellant's request, and some time necessarily was required for the police to arrive. This certainly gave appellant an intervening interval or opportunity for deliberation. As the record now stands the court did not err in excluding the testimony of the police officers.

For the error in refusing to give the requested instruction as above noted, the judgment is reversed and the cause remanded.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.