STATE of Missouri, Respondent,

v.

Earl WILKERSON, Defendant-Appellant.

No. 62497.

Supreme Court of Missouri,

En Banc.

May 11, 1981.

Rehearing Denied June 11, 1981.

Cornelius T. Lane, Sp. Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Pursuant to Rule 83.02, the Eastern District of the Court of Appeals, upon application of the State, ordered this cause transferred to this Court after filing an opinion reversing appellant's second degree murder conviction and affirming his robbery and kidnapping convictions. Although we dispose of this case as if it were the original appeal, Mo.Const. Art. V, § 10, portions of the Court of Appeals opinion are incorporated, without quotation marks, in this opinion.

By the Eastern District's order transferring the case to this Court, we are squarely confronted with an issue which has caused considerable consternation in the Bench and Bar of this State: Does that part of the opinion in *State v. Handley*, 585 S.W.2d 458 (Mo. banc 1979), which would hold that second degree murder is no longer a lesser offense of first degree murder, have any continuing vitality? *See State v. Bradshaw*, 593 S.W.2d 562, 565 (Mo.App.1979); *State v. Martin*, 602 S.W.2d 772 (Mo.App. 1980); *State v. McCall*, 602 S.W.2d 702 (Mo. App.1980). For the reasons set forth herein, we hold that it does not. We first set out the relevant facts leading to this appeal.

Vernice Weary and her sons Larry, age 15, and Michael, age 17, lived on the first floor of a flat at 4538 Red Bud in the City of St. Louis. In the early morning hours of July 30, 1977, all three were in the house; Larry and Michael were asleep in the same bedroom. Larry was awakened by the sound of gunshots coming from the direction of his mother's bedroom. Shortly after the shots were fired, the light was turned on in the boys' room and appellant and Horice O'Toole entered. Each had a pistol in his hand. Appellant was known by the boys because he had dated their mother and visited in the home. They had broken up about three months before this occurrence. Appellant ordered Larry to "get up." O'Toole grabbed Michael, put a gun to his head and ordered him to lie on the floor. Appellant left the room and returned with Vernice's purse. He handed the purse to O'Toole who gave it to Michael with an order to look for the car keys and the money. Michael turned over $30.00 that he found in the purse. The car keys were not in the purse. When asked where the keys were, Michael told them they would be in his mother's room or "in the door." Appellant left and returned with the car keys. The boys got dressed and Michael was then told to unlock the door to a third bedroom

where a stereo component was kept. After opening the door, they started to disconnect the component as instructed when a noise from upstairs was heard. Appellant told the boys to forget the stereo saying "[i]t won't look right bringing it out this time of the morning."

Appellant and O'Toole took Michael and Larry with them when they left in Vernice's automobile with appellant driving. After appellant stopped for gasoline, they drove to Fourth and Bond Streets in East St. Louis, Illinois. When they stopped, O'Toole asked appellant, "Do you want to do one of these with me?" The men got the two boys out of the car. Appellant ordered Michael to climb into a boxcar that was standing on railroad tracks nearby. Appellant climbed into the boxcar behind Michael, aimed the gun at him and fired. Hit in the left shoulder, Michael spun around and fell to the floor. Appellant fired two more shots that missed Michael.

O'Toole took Larry to the far side of the railroad cars and ordered him to run up the hill. When Larry neared the top, O'Toole ordered him to lie down. He then shot him in the leg and then left with appellant.

The boys managed to get to their grandfather's house in the immediate neighborhood. They told their grandfather what had happened and called Vernice's employer. They were then taken to the hospital. The body of Vernice was found in her bedroom. The bullets found in her body had the same markings as those found in the boxcar where appellant shot Michael Weary.

On August 23, 1977, appellant was charged by an indictment with one count of capital murder in violation of §§ 559.005 and 559.009(1), RSMo Supp. 1975, two counts of kidnapping in violation of § 559.-240, and one count of first degree robbery in violation of §§ 560.120 and 560.135. (This indictment, of course, preceded the effective date of amended Rule 24.04 [now Rule 23.05], which permits only related capital murder offenses to be charged in the same indictment or information with other capital murder offenses. That rule became effective January 1, 1979.)

For the apparent reason that on August 23, 1977, the date the indictment was filed, §§ 559.005 and 559.009 had been repealed and replaced by §§ 565.001 and 565.008, a substitute information in lieu of the indictment was filed on April 6, 1978, charging appellant with violation of §§ 565.001, 565.-008, and the same counts of kidnapping and first degree robbery charged in the indictment.

On May 2, 1978, an amended information was filed substituting a charge of first degree murder, §§ 565.003 and 565.008, RSMo Supp. 1977, for the capital murder charge.

A jury convicted appellant of second degree murder, first degree robbery, and two counts of kidnapping. The jury was unable to agree upon punishment, and the court assessed punishment at 75 years imprisonment on the conviction of second degree murder, 10 years on each of the kidnappings, and 15 years on the robbery; the kidnapping and robbery sentences are to run concurrently with each other and consecutive to the sentence for second degree murder. Appellant appealed the judgment entered upon the jury verdict to the Court of Appeals, Eastern District.

Before addressing the points raised by appellant, the Eastern District, *sua sponte*, considered the effect of *State v. Handley*, *supra*, and said:

"The plurality opinion of Seiler, J. in *Handley* states at page 462.

' "common form" second degree murder (§ 559.020) is not a lesser included offense of "first degree felony-murder" under § 559.007 because the latter does not include the elements of willfulness, premeditation, or malice aforethought, each of which are necessary for "common form" second degree murder.'

"Although this portion of the opinion had no concurrence and thus was not decided with authority the Supreme Court denied transfer of *State v. Bradshaw*, 593 S.W.2d 562 (Mo.App.1979) which adopted the rationale of the *Handley* plurality as quoted above. We thus

feel constrained to hold that the trial court was without jurisdiction to instruct on common form second degree murder because that crime was not charged in the amended information. The conviction on that issue cannot stand. *State v. Bradshaw, supra.*"

The Eastern District then went on to hold that appellant could be retried for second degree murder and affirmed his robbery and kidnapping convictions. As stated earlier, the Eastern District granted the State's application for transfer of the case to this Court.

The plurality opinion in *Handley* stated that the "protection of [Article I, § 17 of the Missouri Constitution] renders any conviction for a crime not charged *or necessarily included in the underlying indictment or information* a nullity." (Emphasis added). The flaw in the opinion is that it gave recognition to the provisions of § 556.230, RSMo 1969 (applicable in *Handley* and in this case) but ignored the provisions of § 556.220, RSMo 1969 (also applicable in *Handley* and in this case).

Section 556.230, *supra,* reads as follows: "Upon an indictment for an assault with intent to commit a felony, or for a felonious assault, the defendant may be convicted of a less offense; and *in all other cases, whether prosecuted by indictment or information,* the jury or court trying the case may find the defendant not guilty of the offense as charged, and find him guilty of any offense, the commission of which is necessarily included in that charged against him." (Emphasis added).

Section 556.220, *supra,* reads as follows: "Upon indictment for any offense consisting of different degrees, as prescribed by this law, the jury may find the accused not guilty of the offense charged in the indictment, *and may find him guilty of any degree of such offense inferior to that charged in the indictment,* or of an attempt to commit such offense, or any degree thereof; and any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, al-

though the evidence in the case shows him to be guilty of a higher degree of homicide." (Emphasis added).

■ The jury in this case found appellant guilty of second degree murder under a charge of first degree murder. In our view, the jury thereby found appellant guilty of a degree of murder "inferior to that charged in the indictment * * *." *See* §§ 565.003 and 565.004.

■ That the legislature has recognized and continues to recognize a difference between an offense being a lesser offense of the offense charged because it is specifically denominated as such and an offense being a lesser offense because it is necessarily included in the offense charged is clear from § 556.046, the language of §§ 556.220 and 556.230, *supra,* and the statutory history behind the latter sections. The initial predecessor of § 556.220 was R.S. 1835, p. 214, § 14, which provided:

"§ 14. Upon an indictment for an offence, consisting of different degrees, as prescribed by this act, the jury may find the accused not guilty of the offence charged in the indictment, and may find him guilty of any degree of such offence, inferior to that charged in the indictment, or of an attempt to commit such offence."

And, until the initial predecessor of § 556.230 was enacted, R.S. 1879, p. 285, § 1655, one could not be convicted of a lesser offense of the offense charged unless it was specifically denominated as a lower degree of the offense charged, regardless of whether it was necessarily included in the offense charged or not. *See State v. Davidson,* 73 Mo. 428 (1881).

Of course, if this case had arisen after January 1, 1979, the effective date of § 556.046, RSMo 1978, a portion of that section would rule the case. It restates the substance of § 556.220, *supra:* "1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when * * * (2) It is specifically denominated by statute as a lesser degree of the offense charged; * * *."

Since second degree murder, of which appellant was convicted, is "specifically denominated by statute as a lesser degree of the offense charged"—first degree murder—no error would be present here.

■ Section 556.046 is a legislative determination that an offense can be a lesser offense of another offense so that a charge of the greater will support a conviction of the lesser although the lesser *is not necessarily included* in the greater as was required in *Handley*. Of course, "[c]onviction upon a charge not made would be sheer denial of due process." *DeJonge v. Oregon*, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937). However, by specifically denominating a crime as a lesser degree of another, the constitutional requirements that one be apprised of the charge against him, found in the Sixth Amendment to the United States Constitution and Art. I, § 18(a) of the Missouri Constitution are met.

The opinion in *Handley, supra*, insofar as it conflicts with the view expressed herein, should no longer be followed.

Viewing the evidence in the light most favorable to the State, we conclude there is sufficient substantial evidence to support the conviction of second degree murder.

We now turn to the points raised by appellant.

■ Appellant alleges the trial court erred in permitting the State to file a substitute information in lieu of the indictment because the original indictment was a nullity in that it was based upon a statute that had been repealed. Although it is true that § 559.005, under which appellant was charged by indictment on August 23, 1977, had been repealed on May 26, 1977, and replaced with § 565.001, RSMo Supp. 1977, a comparison of the two statutes demonstrates that the incorrect citation to § 559.-005 in the indictment does not amount to a "defect or imperfection [tending] to the prejudice of the substantial rights of the defendant upon the merits." § 545.030, RSMo 1978. Section 559.005 provided: "A person is guilty of capital murder if he unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of a human being." Section 565.001, RSMo Supp. 1977 (now RSMo 1978), provided: "Any person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder."

Although the language of the statutes is not identical, the fact that both statutes contain exactly the same elements leads us to conclude that appellant was not misled by the incorrect citation. *See State v. Jackson*, 594 S.W.2d 623 (Mo.1980). The trial court did not err in permitting the filing of the substitute information.

■ We now address appellant's points related to his convictions of robbery and kidnapping, crimes charged in both the substitute information and the amended information.

Appellant interposed the defense of coercion. In aid of that defense he testified that he had gone to Ms. Weary's home sometime after 1:30 a. m. seeking transportation to his home. While visiting with her, she answered the door and admitted a man who "had some kind of garment pulled over his face." This man, who was carrying two guns, had a discussion with Vernice and then shot her two or three times. Appellant testified that Horice O'Toole handed appellant an unloaded gun and said, "Just do like I tell you and you won't get hurt." He said that everything he did while in the presence of O'Toole was done under O'Toole's orders.

Appellant contends that the court unduly restricted his voir dire examination of the jurors in that it would not permit him to inquire whether members of the jury panel would consider the defense of coercion.

This issue arose when counsel for appellant stated to the jury, "Now, in this particular case the defense of coercion will be the defense as to Counts II, III and IV." Counsel for the State then asked for a side bench conference. Defense counsel, during the colloquy, stated, "Here's my point, Judge.

The State may ask the question and they are allowed to ask questions if we prove these facts will you find the defendant guilty. I think I have a right to ask this jury if I have a defense if they feel that that is a valid defense or they wouldn't even consider that as a defense' cause if a person says, 'I can't possibly consider coercion as a defense,' then he cannot consider the law in the case, and I think I have a right to ask."

It is obvious from the portion of the voir dire contained in the transcript that the court understood that any question would include a reference to facts that appellant intended to prove. Counsel had evidently been referring to facts throughout the voir dire because the court commented that counsel were "trying to try this case on voir dire."

Counsel told the court that he wanted to ask the question because he felt that he would have evidence of coercion, a valid defense and "I think I should be able to inquire of them as to whether or not they would consider that a—would even consider that as a defense." His statement did not dispel the court's concern that his question would contain reference to facts which he intended to prove. In giving the reason for its ruling, the court stated, "This is not the time to offer evidence with respect to the defenses and I'm not going to permit it. I think it's sufficient if counsel inquires as to whether or not he has a defense which the Court instructs on whether they will follow that without mentioning the type of defense—whether they will follow the instructions and consider all of the instructions in the case."

Appellant relies upon *State v. Brown*, 547 S.W.2d 797, 798 (Mo. banc 1977), which is distinguishable from the case at bar. Although counsel for Brown did not proffer the specific question that he intended to ask, he told the court that he would ask the jury "whether they could follow the law with respect to the burden of proof on [self-defense]." He further assured the court that in asking the question he would not go into the "details" of the case. The court in *Brown* reiterated the principle that "a litigant's method of challenging a trial court's ruling on permissible voir dire questions should be specific." *Id.* at 800. It held, however, that even though counsel did not offer the specific question he wished to ask, he made it clear that he intended to use a proper question without going into the factual basis for the instruction that the court might give.

In the case now before us, counsel failed to assure the court that he would not refer to facts he intended to prove. In addition, the court and defense counsel in *Brown* were concerned about mental attitudes of the veniremen toward requiring the State to negate the defense. Such concern was not present in this case because, as the trial court recognized, the burden of proving coercion remains upon the defendant. We do not believe the court abused its discretion in refusing to permit the questioning. *State v. Ross*, 563 S.W.2d 125 (Mo.App. 1978).

■ The trial court did not err in refusing to allow evidence of oral and written statements appellant made to the police that appellant admits were self-serving and not a part of the res gestae. *State v. Hemphill*, 504 S.W.2d 62 (Mo.1974).

■ Appellant next complains that during argument the State sought by inflammatory appeals to arouse personal hostility or personal fear of the appellant. He relies upon *State v. Heinrich*, 492 S.W.2d 109 (Mo. App.1973).

That portion of the argument of which he complains reads as follows:

"What then is our purpose here other than to do justice? To analyze the facts and to speak honestly from our conscience what we have heard. That is your job. It is to take a man like this who would do such a horrible thing and have the audacity to come in here and say such stuff for lack of a more appropriate word, it is to take this man who would not just rob—just heinous, heinous crime—and it is to take him for our protection just like that dead lock bolt, just

like that iron gate—none of which worked—is for the protection of all the Vernice Wearys up and down Red Bud Avenue and up and down Carondelet and up and down Grand and Ohio and Oleatha and Fairview and all over this town, and it's to remove him from this town so that the kids like this can grow up in the world and not have to have an iron gate, not have to double bolt the door to just live."

It is generally held that control of argument rests largely in the sound discretion of the trial court. *State v. Kimmins,* 514 S.W.2d 381 (Mo.App.1974). Prosecutors are permitted wide latitude in arguing the necessity for law enforcement and the jurors' responsibility in that regard in line with punishment to be assessed. *State v. Wade,* 535 S.W.2d 492, 498 (Mo.App.1976). The case before us is similar to *State v. Evans,* 406 S.W.2d 612 (Mo.1966). The portion of the argument complained of here came at the very end of the State's closing argument. The opening argument and the major portion of the closing argument were devoted to a discussion of the facts pointing to appellant's guilt. At the end of his argument, counsel urged the jury to "do justice," to analyze the facts and make a determination dictated by their conscience based upon the facts. The reference in the State's argument here respecting appellant, as in *Evans,* is predicated on a finding of guilt. Under such circumstances the rules set out in *State v. Heinrich, supra,* are not violated. The case at bar does not contain the repeated highly inflammatory comments found in *Heinrich.* The court did not abuse its discretion in overruling appellant's objection to the portion of the argument set out above.

■ Appellant next claims that the court erred in giving MAI–CR 2.10 (accomplice) in connection with the instructions on murder first degree, felony murder, murder in the second degree, and manslaughter because there was no evidence that appellant was associated with O'Toole in the commission of the killing of Ms. Weary.

Appellant argues that the only evidence concerning the killing of Vernice Weary was the testimony of appellant that "a masked man came to [Vernice's] home, argued with her, then shot her." The jury was not required to believe the testimony of appellant. *State v. Wade, supra,* at 495. As set out in the facts above, there was sufficient evidence that appellant and O'Toole were acting together, that one of them shot her, and that it may have been appellant. Both men had guns. The bullets found in the boxcar where appellant shot Michael and those taken from the body of the deceased had similar markings. They had the same number of lands and grooves. During the time that appellant and O'Toole were in the presence of Michael and Larry, the two men were cooperating with each other. There was no evidence, outside of appellant's testimony, that O'Toole was acting alone and that appellant was under the domination of O'Toole. The jury could find from the evidence that the appellant and O'Toole had killed Vernice and appellant took the initiative of taking her purse and obtaining the car keys in aid of their escape. It was the appellant who made the decision not to take stereo equipment for fear of detection, indicating that he was exercising some authority in the enterprise.

Appellant relies on *State v. Jackson,* 463 S.W.2d 857 (Mo. banc 1971) which is readily distinguishable because in *Jackson* the State relied solely upon a statement made by the defendant that exonerated defendant of the charge upon which he was convicted. We find that there was sufficient evidence that appellant and O'Toole were accomplices.

Appellant also argues that the instruction of his defense of coercion as to the charges of kidnapping and robbery was erroneous because they placed the burden of proving coercion upon appellant rather than the State.

■ Under Missouri's pattern instructions, the defendant has the burden of proof on affirmative defenses but not on special negative defenses. *State v. Brown,* 547

S.W.2d 797, 799 (Mo. banc 1977), and MAI–CR 2.04 Notes on Use, paragraph 2. In *State v. Brown*, 561 S.W.2d 388, 391 (Mo. App.1977), where both the prosecution and defense submitted coercion instructions in the form of a special negative defense, placing the burden of proof on the State, the court was not required to determine the issue presently before us. The court did, however, comment in a footnote that coercion is an affirmative defense according to the great weight of authority.

We believe that any doubt as to whether duress or coercion is an affirmative defense or a special negative defense has been resolved by the adoption of MAI–CR 3.26 on duress, effective January 1, 1979. The instruction places the burden of proof on the defendant and Notes on Use, paragraph 4, states that duress is an affirmative defense.

Appellant's reliance upon *State v. Davis*, 559 S.W.2d 602, 605 (Mo.App.1977) is misplaced. In *Davis* the defendant sought to impose the defense of coercion contending that the crime was committed under the domination of her husband. This would invoke the common law rule that a crime committed by a wife in the presence of her husband is presumed, in the absence of contrary evidence, to have been coerced. It was in this posture that the court was prompted to state, at page 605, "When the evidence gives rise to the presumption of coercion by the husband, it falls to the State to show that the wife was not drawn to the offense by him but committed the conduct voluntarily; otherwise the presumption of duress will prevail." The court further held that the facts in that case did not give rise to the presumption.

▆ Finally, appellant alleges the trial court erred in giving verdict-directing instructions on robbery of Vernice Weary. We conclude there was substantial evidence, as recited *supra*, to support the submission of the robbery instructions. The fact that the taking of Ms. Weary's property did not occur *precisely simultaneously* with the exercise of violence upon her does not render the submission of the instruction improper. *See State v. Hayes*, 518 S.W.2d 40, 45–46 (Mo.banc 1975).

The convictions of murder second degree, kidnapping, and robbery are affirmed.

RENDLEN, WELLIVER and HIGGINS, JJ., concur.

MORGAN, J., concurs in separate concurring opinion filed.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of BARDGETT, C. J.

MORGAN, Judge, concurring.

I concur not only because of the reasoning found in the principal opinion but also by reason of my dissent in *State v. Handley*, 585 S.W.2d 458 (Mo.banc 1979) at page 471.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

Art. I, § 18(a), Constitution of Missouri, provides "That in criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation * * *."

Amendment VI, Constitution of the United States, provides "In all criminal prosecution, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation; * * *."

The above provisions are satisfied when the charging instrument, here an "information," tells an accused what the prosecution claims he did and the crime or crimes for which a conviction will be sought. As long as the essential differences between a homicide charged (e. g. capital murder) and the homicide convicted of (e. g. second degree murder) are purely the severity or degree of the mental intent of the accused there is no difficulty in applying the rule that a charge of the higher includes a charge of the lower. The overt acts are the same for both offenses and by charging the mental intent required for the higher the mental intent required for the lower is necessarily

part of the higher.[1] No additional or different *fact* need be proven or element satisfied to authorize a conviction of second degree murder than those shown for capital murder.

However, when the hybrid offenses which are pure creatures of statute are considered, the foregoing is not true, regardless of what *name* is given to the offense. The offense now called murder in the first degree set forth in § 565.003 requires for its commission that the defendant (1) perpetrate or attempt to perpetrate the felonies of arson, rape, robbery, burglary or kidnapping, and (2) that he kill someone unlawfully while so doing but without regard to whether the accused had a premeditated intent to kill. In short, the prosecution need not prove and the jury need not find the accused *intended* to kill the deceased in order to find the accused guilty of a violation of § 565.003 (first degree murder).

Second degree murder, the alleged lesser included offense, requires for its commission the *premeditated intent to kill*, and the jury must so find in order to convict of that offense. That another felony was being perpetrated when the killing occurred is not necessary to murder in the second degree.

It is apparent that the intent to kill required in second degree murder is not an element of first degree murder and, therefore, second degree murder cannot be a lesser included offense of first degree murder as defined in § 565.003 because first degree does not include *all* of the legal elements of second degree. *State v. Smith*, 592 S.W.2d 165, 166 (Mo.banc 1979). Because it is not a lesser included offense of first degree murder it is not an offense that is included in the charge of first degree murder. *State v. Smith, supra.*

"A court may not instruct on an offense not specifically charged in the information or indictment unless it is a lesser included offense. This is because due process requires that a defendant may not be convicted of an offense not charged in the infor-

mation or indictment." *State v. Smith, supra* at 165. To convict a person of a crime not charged violates due process rights. *Cole v. Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); *Presnell v. Georgia*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). In my opinion a conviction on a crime not charged denies an accused the constitutional right to notice of the nature and cause of the accusation. Art. I, § 18(a), Constitution of Missouri; Amendment VI, Constitution of United States.

The principal opinion does not hold that second degree murder was properly submitted as a lesser included offense of the crime denominated in § 565.003, called first degree murder, but rather justifies the submission of second degree murder upon a § 556.220, RSMo 1969, which, inter alia, appears to authorize a jury to find a defendant "guilty of any degree of such offense inferior to that charged in the indictment." I do not believe the General Assembly intended, by § 556.220, to authorize a court or jury to commit an unconstitutional act and therefore do not agree that § 556.220 was intended to or does authorize the submission of an offense not charged in the information or necessarily included in the specific charge found in the information. Certainly a statute cannot legalize what is illegal under our state and federal constitutions.

Nor does the principal opinion hold that the charge of first degree murder necessarily included second degree murder and it is clear, under the criteria set forth in *State v. Smith, supra*, that it does not do so.

The point is that by charging a person with a homicide that does *not* require an intent to kill (§ 565.003) it cannot be said that he is on notice that the prosecution will attempt to convict him of a homicide that *does require* an intent to kill (§ 565.004).

Given the definitions of first and second degree murder in Missouri (§§ 565.003 and 565.004), due process prohibits the submis-

1. However, many problems would be solved and appeal time shortened if prosecutors simply set forth in the information or indictment the crimes the prosecutor intends to submit— whether technically lesser included or not.

sion of second degree murder on a charge of first degree murder.

I therefore dissent from the affirmance of the second degree murder conviction.

SEILER, Judge, dissenting.

I respectfully dissent. I do not believe it is constitutional to charge defendant with first degree murder and convict him of second degree murder.

No matter what the old law may have been about first degree felony murder involving deliberation and premeditation, the current first degree murder statute does not. It became effective May 26, 1977 and it provides as follows:

"Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglar, or kidnapping."

Its predecessor, § 559.007, RSMo Supp. 1975, which became effective September 28, 1975, was almost in the same language and provided as follows:

"The unlawful killing of a human being when committed without a premeditated intent to cause the death of a particular individual but when committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping is murder in the first degree."

Twice within two years, as we see, the legislature has enacted statutes eliminating premeditated intent as an element of first degree murder and requiring only that the killing be done in the perpetration and attempted perpetration of certain felonies. Likewise the MAI–CR2d instructions for first degree murder contain no finding of intent, but simply that defendant caused the death of the victim in committing or attempting to commit a particular felony. See MAI–CR2d 15.12 as typical.

Second degree murder, however, requires willful, premeditated killing with malice aforethought. State v. Franco, 544 S.W.2d 533, 535 (Mo.banc 1976), cert. den. 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). See MAI–CR2d 15.14 the required instruction on conventional second degree murder.

I fail to see where charging a defendant with first degree murder in any way amounts to a charge of second degree murder. As the principal opinion agrees, second degree murder is not a lesser included offense of first degree murder, and while the principal opinion does not agree with this, I do not believe it is a degree of murder inferior to that charged in the amended information in the present case.

To borrow from Shakespeare, what's in a name? Providing by statute, § 556.220, that the jury may find defendant, when charged with something else, "guilty of any degree of such offense inferior to that charged", and then calling an offense first degree murder in one statute, § 565.003, and saying in another statute, § 565.004, that all other kinds of murder, with certain exceptions, shall be murder in the second degree, does not mean that second degree murder is somehow "inferior" to first degree murder. One requires premeditation, the other does not. At the time of the offense in question, one involved a penalty of life imprisonment, the other permitted a heavier penalty.

The amended information in the case before us charged first degree murder, for which the penalty at time of the offense was life imprisonment. Section 565.008.2, RSMo Supp.1977. But second degree murder carried a heavier penalty at that time. Imprisonment upon conviction could be as long as 200 years, as this court declared in State v. Stephens, 507 S.W.2d 18, 22 (Mo. banc 1974), or even 500 or 1000 years. I would not call second degree murder a degree of murder inferior to first degree murder when the penalty for the former is higher than the latter.

I think the matter is properly put in an early case, State v. Shoemaker, 7 Mo. 177, 180 (1841), a forgery case. That case discussed the fourteenth section of the 9th article of the act concerning crimes and

punishments (R.C. 1835, p. 214), the predecessor of § 556.220. The 1835 statute likewise provided that the jury may find the defendant guilty of any degree of the offense "inferior to that charged in the indictment." The court said:

> "[T]he fourteenth section could not have been intended to dispense with the rules of the common law, and I may add, of common justice, that the allegation and proofs must correspond. If the inferior degree of offence, of which the party is convicted, be included in the allegations of the indictment, a conviction of such inferior degree is consistent with established principles. But if the other offence be of a totally dissimilar nature, and no count in the indictment contains any description of the inferior offence proved, no judgment could be given against the defendant upon such proof. If, for example, the indictment charges a forgery in the second degree, which our statute declares to consist in counterfeiting coin, or in passing or attempting to pass such coin, the defendant cannot be legally convicted of forgery in the third degree, which consists in making false entries in books with fraudulent intent, &c."

Here the offense of which defendant was convicted—second degree murder—is of a totally dissimilar nature from the offense with which he was accused. He was convicted of an offense requiring a definite intention to kill the victim. He was acquitted of the offense with which he was charged and convicted of one with which he was not charged. I do not believe this can constitutionally be done and I do not believe that a statute which purports to permit a jury to find defendant guilty of an offense different from that charged but which is said to be "inferior to that charged in the indictment" can make it constitutional.

Designating something as "inferior to that charged in the indictment" does not give notice of what it is anymore than designating it as "superior to that charged in the indictment" would. Whether second degree murder is "inferior to" or "superior to" first degree murder, it is a different offense, with different elements. Defendant was not charged with second degree murder or constitutionally warned that he could be convicted of it under the amended information filed against him. "There can be no trial, conviction or punishment for a crime without a formal and sufficient accusation." *State v. McKinley,* 341 Mo. 1186, 111 S.W.2d 115, 118 (1937).

Additionally, if murder requires an intent to kill, then the legislature cannot define it without the intent to kill, although this is exactly what is attempted in the present first degree murder statute. Second degree murder, which does require an intent to kill, cannot be an inferior grade of an offense which requires no intent to kill, simply because the latter is also called murder.

I would reverse the second degree murder conviction.